UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RED HOOK COMMUNICATIONS I, ) | |
| L.P. f/k/a ELLIPSE ) | |
| COMMUNICATIONS I, L.P., ) | |
| ) | CIVIL ACTION NO. |
| Plaintiff, ) | |
| ) | 3:16-CV-0848-G |
| VS. ) | |
| ) | |
| ON-SITE MANAGER, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, On-Site Manager, Inc. ("On-Site"), to dismiss the claim of the plaintiff, Red Hook Communications I, L.P. ("Red Hook"), pursuant to FED. R. CIV. P. 12(b)(6) (docket entry 20). For the reasons set forth below, the motion is granted.

### I. BACKGROUND

On September 1, 2015, Red Hook and On-Site closed a deal whereby On-Site would acquire Red Hook. Plaintiff's First Amended Complaint ("Complaint") ¶¶ 9-12 (docket entry 18). The details were set out in the Asset Purchase Agreement

("APA"), *located in* Appendix in Support of Defendant's Motion to Dismiss ("Motion Appendix") (docket entry 21) at 1-52. Under the terms of the APA, a deferred purchase price ("DPP"), of $100,000 was due to Red Hook on December 25, 2015, but On-Site failed to make the payment and gave no explanation. Complaint ¶ 14. On January 15, 2016, Red Hook sent a letter to On-Site expressing an objection under § 2.4(b) of the APA, which sets forth the procedures for the closing balance sheet review. *Id.* This letter also contained a notice about the late DPP and set a new payment deadline. *Id.* On-Site eventually made the DPP after the new deadline and five weeks after the original December 25, 2015 deadline. *Id.* ¶ 14.

The APA also contains specific indemnification procedures that require On-Site to submit an indemnification claim within sixty days of discovering facts that give rise to a claim. APA § 7.3, Motion Appendix at 45. After any such claim is submitted, Red Hook has sixty days to provide an objection, after which Red Hook and On-Site are both required to use good-faith efforts for sixty days to resolve the dispute. *Id.* If the dispute is not resolved, then On-Site is entitled to initiate proceedings. *Id.* On February 26, 2016, On-Site sent an indemnification notice ("the indemnification notice") to Red Hook. Complaint ¶ 16. On March 7, 2016, Red Hook sent an email to On-Site asking for more information regarding the claims in the notice, and requested that On-Site send the requested information by March 10,

2016. *Id.* ¶ 18. On March 22, 2016, On-Site sent a letter informing Red Hook that it was working on gathering the requested information. *Id.* ¶ 21.

Three days later, on March 25, 2016, Red Hook filed this suit against On-Site for breach of contract relating to its delayed payment of the DPP, an additional $77,696.83 Red Hook claims it is entitled to under 2.4(b) of the APA, and the payment of the $200,000 On-Site has held in connection with the initial indemnification claim procedure. *See* Complaint. On June 13, 2016, On-Site filed the instant motion to dismiss (docket entry 20). Red Hook filed a timely response (docket entry 24), to which On-Site filed a timely reply (docket entry 26).

## II. ANALYSIS

### A. Standard for Rule 12(b)(6) Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to

relief.'" *Id.* at 679 (alteration in original) (*quoting* FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

B. Application

1. *Ripeness*

In its motion to dismiss under Rule 12(b)(6), On Site argues that Red Hook's breach of contract claim regarding the $200,000 initial holdback amount is not ripe. Although this argument should be contained in a Rule 12(b)(1) motion,* the court must consider it because "[t]he requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception. . . ." *Ruhrgas AG v. Marathon Oil Corporation*, 526 US 574, 577 (1999) (internal quotations and citations omitted). On-Site contends that the claim is not ripe because Red Hook failed to follow the process in § 7.3 of the APA for disputing the indemnification claim. "Ripeness -- the fact that a case is neither 'premature [n]or speculative' -- 'is a constitutional prerequisite to the exercise of jurisdiction.'" *Kennard v. Indianapolis Life Insurance*

---

\* "Ripeness is an element of subject matter jurisdiction, which a court can raise sua sponte." *J & J Sports Productions, Inc. v. Mandell Family Ventures, LLC*, No. 3:10-CV-2489-BF, 2012 WL 4512500, at *5 (N.D. Tex. Oct. 2, 2012) (Stickney, Mag. J.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999)); *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 444-45 (Tex. 1993)).

*Company*, 420 F. Supp. 2d 601, 606 (N.D. Tex. 2006) (Fish, Chief J.) (quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir.), *cert. denied*, 537 U.S. 1071 (2002)).

Courts consider whether at the time a lawsuit is filed, the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Waco Independent School District v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000) (internal quotations omitted). "Thus the ripeness analysis focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all." *Id.* (internal quotations omitted). In this case, there was no injury with regard to the initial holdback amount at the time the suit was filed because the contract provides that On-Site was to hold that amount until the dispute was resolved, and Red Hook decided not to follow the dispute resolution procedures. *See* APA § 7.3, Motion Appendix at 45. Therefore, Red Hook's claim to the $200,000 initial holdback amount is not presently justiciable.

### 2. *Rule 12(b)(6) Application*

"Under Texas law, [t]he essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Bridgmon v. Array Systems Corporation*, 325 F.3d 572, 577 (5th Cir. 2003) (internal quotations omitted). Furthermore, a plaintiff cannot prevail on a breach of contract claim when it has

failed to perform its material obligations under the contract. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). Red Hook alleges that On-site has breached the APA by paying the DPP five weeks late and by not paying an additional $77,696.83 that is due to Red Hook. Complaint ¶¶ 15, 22 (citing Exhibit A at 4). However, On-Site contends that Red Hook is barred from bringing these claims because Red Hook breached the APA by failing to follow the dispute resolution procedures in section 7.3. Defendant's Motion to Dismiss for Failure to State a Claim ("Motion") at 1-2 (docket entry 20).

a. Did Red Hook Breach the APA?

Red Hook's first point of opposition to this motion is that On-Site did not properly initiate the dispute procedures of 7.3, which requires "the party seeking indemnification under this Article 7 . . . will, within sixty (60) days thereafter, provide written notice to the party from whom indemnification is sought . . . setting forth the facts and circumstances in reasonable detail (to the extent known) relating to such Damages . . . ." *See* APA § 7.3, Motion Appendix at 45. Looking at the APA and the email Red Hook sent to On-Site after receiving the indemnification notice, the court concludes that the indemnification notice was sufficient to initiate the dispute resolution procedures under section 7.3. *Id.*; Red Hook's Email Request for Information ("Red Hook's Email"), *located in* Exhibit B of Complaint.

Red Hook contends that On-Site failed to send the indemnification notice within 60 days of discovery, as required under section 7.3, and therefore it was insufficient to initiate the dispute resolution procedure.  *See* APA § 7.3, Motion Appendix at 45.  However, under section 7.3, "any failure of an Indemnified Party to timely deliver such notice will not limit the obligations of the Indemnifying Party hereunder except to the extent (and only to the extent) that the Indemnifying Party demonstrates actual damages caused by such failure."  *Id.*  Red Hook has not shown any such damages.

Red Hook also argues that On-Site did not provide "the facts and circumstances" in reasonable detail, Plaintiff's Response to Defendant's Motion to Dismiss ("Response") at 12 (docket entry 24) (quoting the APA § 7.3, Motion Appendix at 45), and therefore the "claims constitute a mere pretext to withhold funds." *Id.* at 13.  However, in the email Red Hook sent in response to On-Site, Red Hook seems to treat the initial letter as an indemnification claim.  *See* Red Hook's Email, *located in* Exhibit B of Complaint.  Red Hook refers to the letter variously as "the claim," "the recent extremely aggressive indemnification claim on what appears to be a series of the most tenuous arguments," and "the $300K plus indemnification claim relating to an alleged breach." *Id.*  Red Hook also says it intends to "respond[] in earnest to the claim" after it receives more information.  *Id.*  Merely because Red Hook did not agree with the claim asserted in the indemnification notice does not

mean that it was not sufficient to constitute an indemnification claim within the meaning of section 7.3. The court concludes that the indemnification claim was sufficient to initiate the dispute resolution procedures of section 7.3.

Because section 7.3 was initiated, Red Hook had sixty days to send an objection. *See* APA § 7.3, Motion Appendix at 45. On Site argues that the email asking for more information was not a sufficient objection to initiate the next sixty days for good faith negotiation, Motion at 18, while Red Hook contends that it was. Response at 14. However this issue is resolved, Red Hook filed suit in breach of section 7.3. If the March 7, 2016 email was an objection, then Red Hook was required to attempt to resolve the dispute in good faith for sixty days. *See* APA § 7.3, Motion Appendix at 45. Filing suit less than twenty days into the sixty day period -- and three days after On-Site communicated to Red Hook that it was preparing the information -- does not appear to be, in the language of the APA, "us[ing] good faith efforts to resolve the Dispute." Even if the email was not an objection, Red Hook still filed suit instead of following the section 7.3 procedure of sending a proper objection and then working in good faith to resolve the dispute.

b. Was Red Hook's Breach Material?

The next issue is whether Red Hook's breach of the contract was material. Texas courts follow the Second Restatement of Contracts when determining if a party's breach is material. *Mustang Pipeline Company, Inc. v. Driver Pipeline Company,*

*Inc.*, 134 S.W.3d 195, 199 (Tex. 2004).  The first circumstance courts look to is "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected." *Id.*  On-Site was entirely deprived of the benefit of required good-faith negotiation before having to go to court.  Motion at 18.  The second circumstance, "(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived," *Mustang Pipeline*, 134 S.W.3d at 199, supports a conclusion that this breach is material because On-Site cannot recover the ability to negotiate in good faith a resolution of the dispute.  Motion at 18.  The third circumstance, "(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture," *Mustang Pipeline*, 134 S.W.3d at 199, supports a conclusion that this breach is material because although Red Hook will lose the ability to contest the $200,000 portion of the holdback, Red Hook will still have the opportunity to follow section 7.3 with regard to the remaining $600,000.  Motion at 1, n.1.  The fourth circumstance, "(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurance," also supports the conclusion that this breach is material. *Mustang Pipeline*, 134 S.W.3d at 199.  Red Hook has not offered to comply with section 7.3, and even if it did, the damage sought to be avoided by the inclusion of section 7.3 has already been done.  *See* Motion.  Finally, the last circumstance considered, "(e) the extent to which the

behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing," *Mustang Pipeline*, 134 S.W.3d at 199, also supports a conclusion that the breach is material because Red Hook disregarded the procedures set forth in section 7.3 and filed suit only three days after On-Site said it was working to gather the information Red Hook requested. *See* Complaint ¶¶ 21-23. Therefore, Red Hook's breach of section 7.3 is material, and precludes Red Hook from bringing this claim unless it can show it was excused from performance. See *Dobbins*, 785 S.W.2d at 378 ("It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach.") (internal quotations omitted)).

### c. Was Red Hook Excused from Performing Because of On-Site's Prior Breach?

Red Hook relies heavily on the "fundamental principle of [Texas] contract law . . . that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). However, "[w]hen one party breaches its contract, the other party must elect whether to continue or cease performance under the contract." *Balfour Beatty Rail, Inc. v. Kansas City Southern Railway Company*, __ F. Supp. 3d __, No. 3:10-CV-1629-L, 2016 WL 1170829, at *23 (N.D. Tex. Mar. 25, 2016) (Lindsay, J.). Once the "non-breaching party elects to treat the contract as continuing and insists the party in default continue

performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties." *Id.* In this case, Red Hook argues that On-Site's failure to pay the DPP for five weeks without excuse, as well as its failure to pay the additional $77,696.83 owed to Red Hook, constitute material breaches of the contract that excuse Red Hook's compliance with section 7.3. Response at 8. However, Red Hook has been treating the contract as continuing by still expecting On-Site to perform, as evidenced by its January 15, 2016 letter requesting more details, reimbursements, and setting a new payment deadline, Red Hook's Objection Notice and Notice of Default Letter, *located in* Exhibit A of Complaint, and the March 7, 2016 email requesting more information and stating an intention to file the objection. Red Hook's Email, *located in* Exhibit B of Complaint. Therefore, Red Hook's breach is not excused and Red Hook is precluded from filing a breach of contract suit because it is in breach of the contract itself. See *Dobbins*, 785 S.W.2d at 378 ("It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach.") (internal quotations omitted).

III. CONCLUSION

For the reasons stated above, On-Site's motion to dismiss is **GRANTED**. Judgment will be entered dismissing this case for failure to state a claim on which relief can be granted.

**SO ORDERED**.

August 8, 2016.

_____
**A. JOE FISH**
**Senior United States District Judge**